All right, we're ready to proceed now. Thank you, Your Honor. Here, the District Court failed to follow settled Supreme Court and Circuit precedent in evaluating plaintiff's complaint. Can I ask you a preliminary question? What counts are the State of Alabama sued in? The State, Your Honor, is sued in the Voting Rights Act. Only? Yes, Your Honor. We're suing the Attorney General. In every other group? In the equal protection claims. Okay. Here, the District Court applied a clearest proof standard to plaintiff's claims of intentional race discrimination. The District Court also completely failed to conduct the required analysis under Arlington Heights and instead wrongly asserted that plaintiff's detailed complaint contained only one conclusory allegation of discrimination. The District Court also faulted plaintiffs for failing to point to evidence of a racist statement by legislators, even though that is certainly not required under this Court's and the Supreme Court's precedent. Let's separate out the claims now and talk about the Voting Rights Act Section 2 claim first before we get to the equal protection claim, which I think is the stronger claim, just speaking for myself. I'm having a hard time figuring out how you allege a concrete, particularized harm or voting dilution because the claim doesn't address any harm related to a voting scheme or a system or a manner of voting, candidacy requirements, qualifications, or changes in the composition of the electorate or the creation or abolition of an elective office. I just don't see the Voting Rights Act claim here. I think what you're really alleging is an equal protection claim. Why am I wrong about that? Well, Your Honor, we are certainly alleging an equal protection claim, but we are also alleging a Section 2 claim. I believe the categories, Your Honor, just named come from Presley and come from Section 5 jurisprudence. Section 5 and Section 2 play very different roles, as the Supreme Court explained in the Reno v. Bossier Parish case. Section 2 is really concerned with addressing practices that result in a denial or abridgment of the right to vote. And the Senate report here, which the Supreme Court has said is the authoritative document for understanding Congress' intent, makes clear that Section 2 is intended to reach practices that operate to minimize or cancel out the voting strength and political effectiveness of minorities. So here, what happened is that the state stripped Birmingham's elected officials of their power to take action to improve the economic condition of the city's citizens, thereby denying the majority black citizens of Birmingham equal access to the political process. If that's the case, when can a state legislature that is of a different race than a minority majority community enact a law of statewide application? Because your voting rights claim, not the equal protection claim, the voting rights claim suggests that going beyond minimum wage, the state of Alabama is in a difficult situation in trying to enact any law that prevents a local municipality from doing something which might create a piecemeal system of legislation. I think that's quite accurate, Your Honor. Here, the state really was acting to deny the political effectiveness of the majority black city here. But wouldn't that happen every time that Birmingham decides to stake out an individual position on its own, and the state of Alabama decides we don't want cities and municipalities and counties doing things on their own? We need uniform legislation throughout? Not necessarily. Here, the issue If the Birmingham voters decided, I don't know Alabama law, so this might be just completely off, but humor me for a second. If Birmingham decided that it wanted to enact a law that imposed an additional 3% tax on hotels, and the state of Alabama said, no, we don't really want municipalities being able to enact that extra tax on hotels, would your claim be the same that the Voting Rights Act had been violated in some way because they hadn't been able to exert their political will? Your Honor, the question really comes down to, first, whether there's a possibility that this is a practice that results in the abridgement of the right to vote and the ability of African Americans to exercise their franchise. And then the Supreme Court has really set out a standard for plaintiffs to meet, and Plaintiff's Complaint meets that standard, which is the Jingles Test, which is a number of factors, some of which are similar to those that you look at in the Arlington Heights. But the Jingles case, the Supreme Court case, takes the Senate factors and adds them and explains how the court should go about looking at whether there's a Section 2 claim. We meet those factors in the complaint. There's a history of official discrimination. The voting here is racially polarized. There's been a lack of responsiveness from the state on the questions on which the black majority city has asked for there to be legislation. And the state's asserted policy interest here is tenuous. There was no need for the state to regulate on this matter up until Birmingham had the temerity to try to pass this minimum wage. Aren't there other states that have passed laws like the one that Alabama passed, although it might have set a higher minimum wage or not, but they've set a uniform baseline? Yes, Your Honor. Most states do have a state minimum wage as well, and Alabama does not. But the question really will turn, for the Section 2 analysis, will turn on the Jingles factors. And plaintiffs should be given an opportunity to put forward evidence that they meet those factors. Again, Section 2 itself is intended to have a broad reach, which means plaintiffs get in the door on Section 2, and then it's up to the plaintiffs to actually set forth evidence that they meet the factors that the Senate intended be met in order to show the effect of this on voting. We're about there. You have four minutes left. I'm more concerned about the Equal Protection Claim, the Voting Rights Act Claim, which I think is weak, but the Equal Protection Claim. Yes, I'd like to turn back to the Equal Protection Claim, Your Honor. The court made a number of errors in ruling on plaintiff's Equal Protection Claim. First, the court argued, and the state continues to argue, that there needed to be the requisite clearest proof of racial purpose in order for a plaintiff's claim to survive. This standard, as we set forth in the brief, is taken from a case which is about statutory construction and about a sex offender registration that violated the Constitution's ex post facto clause. And they concluded that the clearest proof is necessary in an interpreting legislation to determine whether it transforms a civil remedy into a criminal penalty. It has no application here. And applying a clearest proof standard would be contrary to this court's decision in Randall v. Scott, which made clear that no heightened standard applies when you're making a claim of unconstitutional motive. That case involved a qualified immunity context, but the court did a very detailed analysis post-Iqbal and Twombly to say that there's no heightened pleading standard. In fact, it would be improper to apply one where plaintiffs allege unconstitutional purpose. The district court's holding also turned the law on its head by, instead of asking whether a plaintiff's allegation of discrimination was plausible, it held that an equal protection claim is, quote, not plausible where there is an obvious alternative explanation for the conduct other than intentional discrimination. Again, this is contrary to both Eleventh Circuit and Supreme Court law. It's contrary to the Randall v. Scott decision, but also Underwood v. Hunter, the Eleventh Circuit decision that was then affirmed by the Supreme Court, held that a permissible motive will not always defeat an impermissible one. I'll also note that the complaint here had allegations that the state's claimed interest in uniformity was not the sole motivating purpose. On that basis alone, the district court's ruling was improper. The district court further committed error by requiring plaintiffs to allege factual allegations of an attempt to discriminate direct factual allegations. And specifically, the state has pointed out that we had no direct evidence of racist floor speeches. Again, that sort of evidence and that sort of pleading at the pleading stage is not necessary. That was made clear in the United States Supreme Court case of Hunter v. Underwood. Also in this circuit's decision in Isle v. Alabama. Briefly, although I think it's clear from the complaint, I want to outline why the allegations in the complaint on equal protection were clearly sufficient. The state, first of all, concedes that the preemption act here was motivated by Birmingham's decision to raise its minimum wage. There's no serious dispute that the plaintiffs did not adequately allege the disproportionate impact of the challenged action. The goal and effect of the preemption act was to strip Birmingham's local government of its ability to make legislation on behalf of its population, three quarters of whom are African American. And then we also have in the complaint numerous allegations going to the other Arlington Heights factors, which is the framework that this court has to apply in addressing whether we've plausibly pled the equal protection claim. So we have a number of allegations going to the historical background here, both recent as well as as further back. We have details of recent incidents of state action to undermine blacks power at the local government level. We also allege that plaintiffs meet the other Arlington Heights factors regarding this specific series of events here and the departure from regular procedures. One case I would point the court to is Rateman versus Mulkey, which is cited actually in the Shetty case as an example of the type of sequence of events that will support a discriminatory motive. There, the California people amended their constitution to put in place a choice provision that said you can rent to anyone you choose or sell your house to anyone you choose, and it was facially neutral. And the court said that it was clear that it was targeting the protective non-discrimination statutes at issue there. Alabama says in its brief that the history of background racial discrimination is kind of attenuated. It's so far attenuated from the legislative process surrounding this piece of legislation that it shouldn't significantly factor into the analysis. What do you have to say about that? I would say, Your Honor, that the Hunter versus Underwood case that the Supreme Court decided went back 100 years in looking at historical factors in Alabama. And so the allegations that go back that far are certainly relevant, but that we have additional allegations in the complaint about recent events, about the state requiring Birmingham to share political power with the majority white counties around it. For example, on the Water Board, we have recent racial statements in the state legislature where we have detailed allegations about how through redistricting, the state recently has tried to diminish local government power. So I think we meet both the more recent historical background requirement of that factor as well as further back, which the Supreme Court has looked at. And I see my time is up.  You've reserved some time for rebuttal. We'll hear from Mr. Fullerton on behalf of the city of Birmingham and William Bell. The courtroom is full. So we can't get any more people into the courtroom? Yes. Okay. All right. You may proceed, Mr. Fullerton. Thank you, Your Honor. And you're just here for the city of Birmingham and the mayor of Birmingham, and that's it, right? That's correct. The mayor, Bell, was actually dismissed. He was in a physical capacity only. I'm here for the city of Birmingham. Judge, candidly, the city doesn't really have a dog in this fight. We were basically sued by the plaintiffs for the purpose of complete relief. And apparently from their brief, they apparently want to enter an injunction so that if they're successful, then the city would be directed to enact its legislation that it passed, the Minimum Wage Act. The only issue that we have with the plaintiff's argument is that they say that the city is primarily implementing or enforcing the state act, which, of course, we disagree with. The only thing that the city did is after we saw the passage of the state's act, we just stopped completely everything. I mean, nothing had even been done with even implementing our own city act. There's a big difference between, in our opinion, from implementing and enforcing. So we can't order the mayor to defy state law, right? Correct. And he doesn't have any authority to prosecute local businesses for paying less than a $10.10 an hour wage. And even if he could, the act would provide an affirmative defense. That's your argument. Correct, Judge. I mean, after the ordinance was passed by the state of Alabama, we reviewed it and we said this is what the law is. And at that point, we didn't do anything after that point. All right. I know the law obviously doesn't have legal effect  but is the law still technically on the books? I would say it is, Judge, but it's just not being enforced. Right, of course, it can't be enforced. But the Alabama City Council, for example, hasn't taken a vote to repeal the ordinance that it had passed before. Not to my knowledge. Okay. That's all I have, Judge. Thank you. Mr. Fullerton, we'll hear from Mr. Parker on behalf of the Governor and the Attorney General of the state of Alabama. Judge Wilson, and may it please the Court, I am Will Parker. I am here for the State Appellee seeking affirmance of the District Court's decision. And I want to start out by emphasizing again that 22, some 22 states have passed laws similar to the Alabama Preemption Law at issue here. Those states include not just Florida and Georgia, the other states in this circuit, but a number of diverse states like Colorado, Rhode Island, Wisconsin, Louisiana, and so forth. The states do disagree about perhaps what the right minimum wage rate is, but this consensus, I think, shows undeniably that they value uniformity on this policy. And so... The problem is, though, that there's a huge body of law that says, in the right circumstances, you can have a facially neutral law that is passed with discriminatory motive. And so, your initial argument gets you to a point, but it doesn't get you all of the way there because there are a lot of cases that say you can pass something that on its face is neutral and perfectly fine, but if you pass it for the wrong reasons, you may have an issue. Right. And so, going straight to the merits of the plaintiff's intentional discrimination equal protection claim, I want to respond to that comment by starting with the discriminatory impact prong. As you may know, when you have a facially race-neutral statute, the courts will treat it as a racial classification only if the plaintiffs can establish both racial motivation and discriminatory effects. And the Supreme Court has said, I believe it was the... I can't remember the case, the name at the time, but it's in our brief, that absent a discriminatory impact, it's unnecessary and unseemly even to go into discriminatory intent motive. And so I would start your... focus your attention at the initial... at the outset. Why do you think that there's no impact if Birmingham is a majority African-American city? And it's the... and it was at the time the only municipality that had passed this sort of minimum wage ordinance. Right. I think, Judge Jordan, that there's no discriminatory impact because the state law, the preemption law that's at issue here has statewide scope. The Feeney case, personal administrator of Massachusetts says you have to have a linkage between the alleged purpose and the effects. And I think we have to determine the purpose for this part of the analysis. If the effect... the effect is that no other... Remember, you're at the pleading stage. So it's one thing to say they may not be able to prevail at the end of the day or may not even survive summary judgment. It's quite another thing to say that the complaint gets dismissed on its face. So you think that although Birmingham, a majority African-American city, was the only one that had passed this sort of minimum wage ordinance, there's no discriminatory impact because the law is on its face neutral and has complete statewide application. That's right, Judge Jordan. I can see that the plaintiffs have adequately pleaded facts showing that the law would have a discriminatory impact within the city limits of Birmingham. Isn't that enough? I don't think so because the law has a statewide scope and so we have to look, you know, there might be other cities like some, maybe other majority black cities would pass these laws, maybe majority white cities would pass the law. If you pass a law that is neutral on its face but when applied only applies to a limited slice of the state, you can't have discriminatory impact? My point, and I've got two points. First of all, my point is that it does not only apply to a certain slice of the state. By its terms, it applies statewide. It only impacts that slice of the state. And then if I could, I would also add to this that the effects of this law are are speculative to an extent. I think the district court hinted at this in one of its standing holdings that you could accept the allegations in the complaint as true but you also have the possibility that this law does not actually help low-income, low-wage earners and it might end up requiring layoffs or it might end up the Birmingham Ordinance might end up reducing their take-home pay. So there's a lot of speculation there too. That's not the stuff of a motion to dismiss. Sure. Well, if I might, I would love to also turn to the Think the plaintiffs don't have standing in this case? I do think that they don't have standing primarily because of causation and addressability problems with the Attorney General. But on the merits, I would Where, okay. Let's talk about this. You're saying that if they get the state law struck down, they can't get redress? That's correct. Against the Attorney General. Against the Attorney General. If they got the... No, no. But that's a different question of standing. Standing is not a party-based issue. That's a merits-based issue. You may have sued the wrong party so you lose. But you don't deal with merits issues on the standing side. The Supreme Court has made clear that you don't mix the two up. And that complete redressability is not a prerequisite for Article 3 standing. I think there's... You cite a case that says that a plaintiff does not have standing because they can't get complete relief against the defendant they've sued? My argument is that they're not getting relief at all because the most that they could do is get an order against the Attorney General saying, Attorney General, do not institute a civil proceeding against the City of Birmingham seeking to restrain it from enforcing its ordinance. Right. But that does not give the plaintiffs any relief  the minimum wage law is a preemption rule. It simply declares a class of ordinances null and void. So, let's say the City of Birmingham is able to enforce the law again because we've restrained the HAAG from stopping them. The civil... The employers that the city might go after would still be able to hold this preemption rule up in state court against that enforcement action. Same way if the employer... Or they may not. If nobody can sue them for violating the state law and they're within the City of Birmingham they may think it's better business to pay the higher minimum wage that the citizens and residents of Birmingham are going to enjoy because otherwise they may be on the outs. This is all speculation on your part. Right. And I think the more speculative we get the less... Article 3 requires... The speculation is on your part not the plaintiff's part. Right. Well, it's not speculation then to say that this preemption rule is in effect... But preemption is not... Preemption is not a standing issue. But I think it is... Jerome, are you making like an ex parte young argument? It's close to an ex parte young argument. And that's not a standing argument. Right. Well, I say that it's close because as I understand ex parte young we look to see if the defendant has a connection to the enforcement of the law. Right. But I'm... And I have... We've put that in our brief but I'm really focused on to have Article 3 standing these low wage earners have to be able to identify an injury that can be... It's caused by the Attorney General and can be addressed by relief against it. Look, for example, at the request... If the district court strikes down the statute as unconstitutional do they get relief? No. Because we know that this preemption rule is still in effect... No, no, no, no. ...in state court. If the district court judge strikes down the Alabama statute as unconstitutional and declares it null and void do the plaintiffs get relief? I still think the answer is no. And another way to look at this... Why not? If there's no Alabama law in the books that creates a uniform base that means that Birmingham's ordinance rises again and it goes into effect how can they not get relief? Well, again, because the only party we have is the Attorney General... That's not my question to you. My question to you... You and I disagree about the effect that suing the wrong defendant may have on standing. So we just reasonably disagree on that point. But my question to you is if the district court were to decide that the remedy, the proper remedy is to strike down the statute completely do the plaintiffs get the relief they're looking for? And I still have to say no, Judge, because I think... What other relief could they get? Well, one thing... One point to throw into this, if I might, is that if you look at the request for relief, it's really unusual. They asked for the Attorney General, besides a declaration, they asked for the Attorney General to give public notice, which I've sort of joyfully put in the briefs as putting up a billboard, which I think underscores their disability problems here. Didn't the Attorney General after the passage of the Act issue press releases indicating the employers in Birmingham that they didn't have to comply with the City of Birmingham's ordinance? Actually, Judge, the press release I think you're referring to came out before the Minimum Wage Act was passed. So we would say that's not enforcing the law. Also, it would be advice very much akin to if the NAACP had also issued a press release saying that the businesses should comply with the Birmingham ordinance. But it's clear that the Attorney General has the authority to enforce laws passed by the Alabama legislature. And the Attorney General in this instance didn't inform the state legislature that the Act was unlawful. Again, the key to my point in standing, and I would love to go back to merits if I can get time to do that. Three more times. Okay. Is that the, yes, the AG, I think if you look at the law, and read it fairly, I think that really what they're trying to do is just create preemption law. But let's say that the Attorney General, I think you could read the law, is also allowing the Attorney General to sue the local authorities to stop their own, the city's enforcement activities. My point that I keep coming back to is that the law itself is this preemption rule. The AG's ability to issue opinions is just that. It's issuing opinions which is not having any legally coercive effect. It's just like, it may be a little more persuasive, but it's not. Does the Attorney General, is his office imbued with the responsibility to enforce laws passed by the Alabama legislature? As a general matter, yes, and certainly like when you have a criminal prohibition, he has authority to go in and prosecute. So then why, so then why wouldn't he be subject to suit in his official capacity pursuant to Ex Parte Young? Another, so one point to that, Judge Wilson, is if you look at some medical associates versus prior, I believe it is, that was an abortion case. The legislature passed a partial birth abortion ban which included criminal penalties and also a private civil enforcement action. This court said, you can sue the Attorney General insofar as their criminal prohibition because the Attorney General has the authority to enforce those. The civil private enforcement, like a civil, a private right of action, that is something that is between private litigants and state court. And so there is no, in that case it was Ex Parte Young, and so they said no enforcement connection there. I think accommodation and responsibility issues overlap with those. But that is not this case because this case, the Attorney General can sue to enforce the Alabama law, can he not? If Birmingham decided to be an outlier and say, okay, we are going to take a chance. We are going to tell our people to do this and we are going to enforce our higher minimum wage ordinance, the Attorney General could take steps under Alabama law to stop that from happening, right? He could sue the mayor or the legal department of the city of Birmingham and say, stop your enforcement actions. And my only point that I come back to is that that does not give the plaintiffs the relief they need because these are, what I am talking about is the low wage earners. They, they are employers. Let's say, let's say we stop the city of Birmingham's enforcement actions. The employer still has on the books of Alabama, there is no injunction. You cannot join a preemption law. There is this preemption law there. And so, they could still stop not paying. How do you know that would, how do you know that would happen? Perhaps, perhaps. At the 12B6 stage, how do you know  I mean, that is a different question if you take discovery and you take the depositions of an assorted number of Alabama, of Birmingham, of Alabama, of Alabama, of Alabama, and all of the other Birmingham companies and all of their presidents say, we would not do this anyway because of the Alabama law that is still on the books. We would not do this. But it seems to me we are engaged in speculative analysis on your part as to what these companies would do. But you want to get to the merits. I would love to get to the merits. So, I, I want to go back and we have already covered briefly the, the discriminatory effects argument. And, and just to, I can't remember if I got to answer Judge Jordan's question, but on that point, um, the, I'm accepting every, every pleading, every allegation in the complaint is true. Um, and I accept that because of that, I accept that there will be a disparate impact within the city of Birmingham. But my argument is that the law has statewide, statewide impact and therefore that's, that's what we have to look for. Um, I also, um. But the plaintiffs made the argument that the district court in this case didn't apply the proper standard that's set forth in the Arlington Heights case. Um, it requires the clearest proof, uh, clearest proof of, uh, discrimination. Right. That's not supported by the precedent, any precedent that I'm aware of. So, my, my, my response on, on that is I think that first of all, our argument does not depend on acceptance or articulation of any particular, uh, uh, evidentiary threshold. But, what I would say is that there is binding U.S. Supreme Court precedent. They come out of the ex post facto cases, um, that talks about the clear proof standard. And I say that's binding here because in those cases like Smith v. Doe and Fleming v. Nestor, the issue in the ex post facto analysis was did the legislature intend for the challenge provision to be punitive? And so, it was a, it was a very similar analysis. Uh, they, they call the factors a little different things, but it's a very similar. But, but why couldn't an inference be drawn that one of the motive, motivating factors behind the, uh, state law, uh, was discrimination when you take into consideration, first of all, the, the voting was racially polarized. All of the African-American legislature lators voted against it and all of the white legislators in Alabama, uh, voted in favor of it. Um, it's clear that the law has a disparate impact, um, on African-Americans given the, uh, racial composition of the city of Birmingham. This was rushed through in an unusual and expedited nature. And, uh, and then, again, you know, looking at, and I know you make the argument that it's, um, uh, there's evidence that Alabama has used similar strategies in the past to suppress local black majorities. Um, and so when you take all those factors into consideration under Arlington Heights, um, you know, uh, for the district court to say that you need clearest proof of racist motives, I don't see any, uh, precedent supporting that, uh, that right. Right. So, uh, on the, on the standard issue, um, again, my argument relies on these, these other cases. I think that Arlington Heights is really silent about any kind of quantum proof. So I, I would say that those other cases do control. Having said that, I think that's under. But how can you talk about proof at the pleading stage? Sure. So, so proof is, is a little bit of a misnomer. That's the, that's the phrase that the court, Supreme Court uses. But I would say, um, in terms of like Twombly Iqbal analysis, what we have to do is look at the complaint and make sure that the allegations in the complaint are true and that is the proof. And draw all reasonable inferences drawn from those facts, right? And so, and so, and that's, that's, that's right. And I, I attempt to do that in all of our arguments. But I say that when, when you do that, you do not get to the requisite, whatever the requisite level of evidence. So, so I,